11:04AM

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3
      UNITED STATES OF AMERICA,
 4
                     Plaintiff,
 5
      vs.                               Case No.  1:20-cr-189-4
 6                                      Hon. Jane M. Beckering
      MYKAEL LEE BOOKER,
 7
                     Defendant.
 8    _____/

 9                     SENTENCING HEARING

10     BEFORE THE HONORABLE JANE M. BECKERING, U.S. DISTRICT JUDGE

11         GRAND RAPIDS, MICHIGAN - FRIDAY, SEPTEMBER 16, 2022

12

13    APPEARANCES:
      For the Plaintiff:    AUSTIN JACOB HAKES
14                          KATHRYN DALZELL
                            Assistant U.S. Attorney
15                          330 Ionia Avenue, NW, Suite 501
                            Grand Rapids, MI 49503-2580
16                          (616) 456-2404

17    For the Defendant:    HELEN C. NIEUWENHUIS
                            JAMES FISHER
18                          JASNA TOSIC
                            PEDRO CELIS
19                          Federal Public Defender Office
                            50 Louis Street NW, Suite 300
20                          Grand Rapids, MI 49503-2633
                            (616) 742-7420
21
      ALSO PRESENT:         MYKAEL LEE BOOKER, Defendant
22                          JEREMY WILLIAMS, Probation Agent

23    REPORTED BY:          MELINDA I. DEXTER, CSR-4629, RMR, CRR
                            U.S. District Official Court Reporter
24                          602 Federal Building
                            110 Michigan St., NW
25                          Grand Rapids, MI 49503
```

| | | |
|---|---|---|
| 11:10AM | 1 | Grand Rapids, Michigan |
| | 2 | Friday, September 16, 2022 |
| 11:10AM | 3 | 11:10 a.m. |
| 11:10AM | 4 | THE CLERK:  All rise, please. |
| 11:10AM | 5 | The United States District Court for the Western |
| | 6 | District of Michigan, the Honorable Jane M. Beckering, United |
| | 7 | States District Judge, presiding. |
| | 8 | All persons having business before this court draw |
| | 9 | near, give attention, and you shall be heard.  God save these |
| 11:11AM | 10 | United States and this Honorable Court.  This court is now in |
| 11:11AM | 11 | session.  Please, be seated. |
| 11:11AM | 12 | THE COURT:  Good morning, everyone. |
| 11:11AM | 13 | MR. HAKES:  Morning. |
| 11:11AM | 14 | MS. DALZELL:  Morning, Your Honor. |
| 11:11AM | 15 | THE COURT:  Looks like we have a relatively full |
| 11:11AM | 16 | courtroom here with several folks on behalf of our Defense, |
| 11:11AM | 17 | which is wonderful to see, and looks like some friends and |
| 11:11AM | 18 | family of Mr. Booker as well. |
| 11:11AM | 19 | We are here for the date and time scheduled for |
| 11:11AM | 20 | sentencing in the matter of the United States of America |
| 11:11AM | 21 | versus Mykael Lee Booker, Case No. 1:20-cr-189. |
| 11:11AM | 22 | May I have appearances of counsel and introductions, |
| | 23 | please. |
| 11:11AM | 24 | MR HAKES:  Good morning, Your Honor.  Austin Hakes on |
| 11:11AM | 25 | behalf of the United States, and with me at counsel table is |

| | | |
|---|---|---|
| 11:11AM | 1 | Ms. Kathryn Dalzell, who will be arguing the objection on |
| 11:11AM | 2 | behalf of the Government today. |
| 11:11AM | 3 | THE COURT:  Okay. |
| 11:11AM | 4 | Good morning. |
| 11:11AM | 5 | MS. NIEUWENHUIS:  And Helen Nieuwenhuis on behalf of |
| 11:12AM | 6 | Mr. Booker, Your Honor.  He does pronounce his name Michael, |
| 11:12AM | 7 | even though it looks different. |
| 11:12AM | 8 | THE COURT:  Oh, and I've done that wrong before.  I |
| 11:12AM | 9 | apologize.  Michael. |
| 11:12AM | 10 | MS. NIEUWENHUIS:  And I've taken my appellate |
| 11:12AM | 11 | division with me, along with another attorney from our office, |
| 11:12AM | 12 | James Fisher, and Jasna Tosic and Pedro Celis.  I do not hold |
| 11:12AM | 13 | myself out as a scientific genius by any stretch, but today I |
| 11:12AM | 14 | will have Mr. Fisher make those arguments in regard to the |
| 11:12AM | 15 | armed career criminal designation, Your Honor. |
| 11:12AM | 16 | THE COURT:  Great.  Thank you. |
| 11:12AM | 17 | Welcome, everyone. |
| 11:12AM | 18 | All right.  Well, I have spent the better part of |
| 11:12AM | 19 | three days learning chemistry, organic chemistry, and |
| 11:12AM | 20 | understanding what the term stereo isotope means or isomer, |
| 11:12AM | 21 | and I think I have a pretty good handle on this, but enough, I |
| 11:12AM | 22 | guess, to be able to discuss that today and to make some |
| 11:12AM | 23 | important decisions before the Court. |
| 11:12AM | 24 | In preparation for today, I've reviewed several |
| 11:13AM | 25 | documents so that I can fully understand you, Mr. Booker, and |

11:13AM  1    the decision that I have to make today.  I've read all of the

11:13AM  2    Indictments:  The Indictment, the Superseding Indictment, the

11:13AM  3    Second Superseding Indictment, and the Third Superseding

11:13AM  4    Indictment.

11:13AM  5        I read the plea agreement that was affiliated with

11:13AM  6    your second plea process in front of me.  I've read the final

11:13AM  7    presentence report, the Defendant's sentencing memorandum and

11:13AM  8    the attachments to that, the Government's sentencing

11:13AM  9    memorandum and the attachments to that.

11:13AM  10       We have an order of forfeiture in this case already

11:13AM  11   situated that will enter with our judgment today.  And I've

11:13AM  12   read the joint stipulation of admissibility of prior

11:13AM  13   testimony, and that is in regard to a prior case -- I want to

11:13AM  14   say *Robinson*.  Yes.  I read the deposition -- er, excuse me,

11:14AM  15   the testimony that was presented in front of Judge Maloney on

11:14AM  16   the same issue, the Armed Career Criminal Act, and its

11:14AM  17   applicability in a cocaine-related case of state offenses in

11:14AM  18   the matter of the *United States v. Robinson* from the Western

11:14AM  19   District of Michigan, No. 121-cr-118, and the associated

11:14AM  20   attachments and reports and other matters.  We'll get to that

11:14AM  21   in a moment.

11:14AM  22       Are there any other documents either party believes

11:14AM  23   the Court should have reviewed before in preparation of

11:14AM  24   sentencing today?

11:14AM  25           MR. HAKES:  I don't know if I heard the Court mention

11:14AM 1    the sentencing memoranda from both parties, but other than

11:14AM 2    that...

11:14AM 3              THE COURT:  I did.  Yes.

11:14AM 4              MS. NIEUWENHUIS:  No, Your Honor.  There was a letter

11:14AM 5    submitted on behalf of Mr. Booker, which I think turned out to

11:14AM 6    be an attachment to our sentencing memo.  So I assume you did

11:15AM 7    read that.

11:15AM 8              THE COURT:  An individual from the NAACP of Grand

11:15AM 9    Rapids?

11:15AM 10             MS. NIEUWENHUIS:  Yes, that is correct.

11:15AM 11             THE COURT:  Yes.  Thank you.  I did read that.

11:15AM 12             All right.  So this case comes to us by plea of

11:15AM 13   conviction.  On July 20, 2021, Mr. Booker pled guilty to

11:15AM 14   Counts 1, 2, 3, and 4 of the Superseding Indictment.  I

11:15AM 15   believe that was before Judge Kent.  He issued a report and

11:15AM 16   recommendation for Judge Jonker to accept that.

11:15AM 17             Judge Jonker did accept that by an order, but based

11:15AM 18   on the results of some drug testing, Mr. Booker asked for an

11:15AM 19   opportunity to withdraw his plea.  There was a hearing, and

11:15AM 20   Judge Jonker allowed him to withdraw his plea as to Counts 2

11:15AM 21   and 4 of that Superseding Indictment.  And then a Third

11:15AM 22   Superseding Indictment was issued, and Mr. Booker pled guilty

11:15AM 23   to Count 2 of that Third Superseding Indictment before me on

11:16AM 24   March 25, 2022, which was the subject of a plea agreement.

11:16AM 25   The first one was not.

| | |
|---|---|
| 11:16AM | **1** |
| 11:16AM | **2** |
| 11:16AM | **3** |
| 11:16AM | **4** |
| 11:16AM | **5** |
| 11:16AM | **6** |
| 11:16AM | **7** |
| 11:16AM | **8** |
| 11:16AM | **9** |
| 11:16AM | **10** |
| 11:16AM | **11** |
| 11:16AM | **12** |
| 11:16AM | **13** |
| 11:16AM | **14** |
| 11:16AM | **15** |
| 11:16AM | **16** |
| 11:16AM | **17** |
| 11:16AM | **18** |
| 11:16AM | **19** |
| 11:17AM | **20** |
| 11:17AM | **21** |
| 11:17AM | **22** |
| 11:17AM | **23** |
| 11:17AM | **24** |
| 11:17AM | **25** |

I did accept that plea agreement on March 25th -- er, excuse me, the plea of conviction for Count 2 of the Third Superseding Indictment at the time of the change of plea hearing.  I reserved whether to accept the written plea agreement, and I have reviewed that.  I've read the PSR and all of the other documents, and I do accept that written plea agreement.  I find that it is -- adequately reflects the seriousness of the actual offense behavior, and it adequately serves the interest of justice.

So that takes us to the presentence report.  It's my understanding the Government has no factual objections to the presentence report.

Is that true?

MR. HAKES:  Yes, Your Honor.

THE COURT:  And the Defense, same?

MS. NIEUWENHUIS:  That is correct, Your Honor.

THE COURT:  Mr. Booker, before we talk about the scoring, I want to ask you a few questions.  Did you have a chance to read the entire presentence report?

THE DEFENDANT:  Yes, ma'am, I did.

THE COURT:  And did you -- did you have an opportunity to talk about that report with Ms. Nieuwenhuis or other counsel?

THE DEFENDANT:  Yes, ma'am, I did.

THE COURT:  Do you find that factually everything in

11:17AM  1    it is accurate and complete?

11:17AM  2          THE DEFENDANT:  Yes, everything except for the gang

11:17AM  3    involvement that they say that I was a part of.  That was the

11:17AM  4    only thing that I objected to.

11:17AM  5          THE COURT:  Oh, right.  Yes.  You took issue with the

11:17AM  6    statement that you belonged to -- at some point you belonged

11:17AM  7    to Bemis Brothers?

11:17AM  8          THE DEFENDANT:  That and also the Black Gangster

11:17AM  9    Disciples.

11:17AM  10          THE COURT:  You deny membership to either.

11:17AM  11          THE DEFENDANT:  Right.

11:17AM  12          THE COURT:  Okay.  That wasn't clear in that PSR.

11:17AM  13    Okay.  I won't consider your gang membership in sentencing.

11:17AM  14    So it's not material to me.

        15          THE DEFENDANT:  All right.

11:17AM  16          THE COURT:  Are there any other areas in which you

11:17AM  17    find the PSR to be either inaccurate or incomplete?

11:17AM  18          THE DEFENDANT:  No, ma'am.  Other than my -- the

11:17AM  19    armed career thing, but, no, ma'am.

11:17AM  20          THE COURT:  Do you have any questions about the PSR

11:18AM  21    at this point?

11:18AM  22          THE DEFENDANT:  No, ma'am.

11:18AM  23          THE COURT:  And has Ms. Nieuwenhuis and her defense

11:18AM  24    team represented you to your satisfaction to this point in

11:18AM  25    time?

11:18AM   1              THE DEFENDANT:  Yes, ma'am.

11:18AM   2              THE COURT:  All right.

11:18AM   3              All right.  With regard to the presentence report,

11:18AM   4      it's my understanding the Government has no objection to the

11:18AM   5      scoring as set forth in that report as --

11:18AM   6              And let me acknowledge and thank Mr. Jeremy Williams,

11:18AM   7      our probation officer, for being here as well who prepared

11:18AM   8      that report.

11:18AM   9              And back to the Government.

11:18AM   10             MR. HAKES:  That's correct.  No objections from the

11:18AM   11     Government.

11:18AM   12             THE COURT:  Now, it's my understanding that the

11:18AM   13     Defense has an objection, and that's to the armed career

11:18AM   14     criminal applicability in this case, correct?

11:18AM   15             MS. NIEUWENHUIS:  That is correct, Your Honor, yes.

11:18AM   16             THE COURT:  Why don't we turn to that now.  And let

11:18AM   17     me tee it up.  I'm going to lay the landscape down, and then

11:18AM   18     we're going to get into the heart and the meat of the coconut

11:18AM   19     as it were.

11:19AM   20             All right.  So at issue is whether or not the

11:19AM   21     Chapter 4 enhancement relative to paragraph 95 of the PSR, the

11:19AM   22     Armed Career Criminal Act, which is pursuant to 18 U.S.C.

11:19AM   23     924(e), applies in this case associated with Mr. Booker's

11:19AM   24     three prior cocaine related convictions in state court.  So to

11:19AM   25     dial down to whether that applies here, first we look to 4.41B

11:19AM   1    [sic].  That is the guidelines in this manual.  This is how we

11:19AM   2    calculate those guidelines, and the guidelines are an advisory

11:19AM   3    recommendation for this Court to consider the proper sentence

11:19AM   4    in this case based on the number of factors in that.

11:19AM   5         So 4B1.4 is what we're looking at, and it defines

11:19AM   6    what an armed career criminal is.  And it states -- really

11:20AM   7    what it does is saying if the person is an armed career

11:20AM   8    criminal how -- it tells us how to score that, and in this

11:20AM   9    case it would be 34 if we believe that Mr. Booker is an armed

11:20AM   10   career criminal.

11:20AM   11        So who is an armed career criminal?  That's set forth

11:20AM   12   in 18 U.S.C. 924(e) -- excuse me, (e)(1), right?  And it's

11:20AM   13   anyone who violates 922(g) of this title and has three

11:20AM   14   previous convictions by any court referred to in

11:20AM   15   Section 922(g) of this title for either a violent felony --

11:20AM   16   and we know Mr. Booker has a home invasion, and nobody is

11:20AM   17   contesting that that is, in fact, a violent felony -- or a

11:20AM   18   serious drug offense -- and that is where we're going to have

11:20AM   19   our discussion -- or both.  They have to be committed on

11:20AM   20   different occasions from one another.  That is not in contest

11:21AM   21   here.  And then it talks about the consequences.

11:21AM   22        That statute also defines what a serious drug offense

11:21AM   23   is.  And it states under 924(e)(2)(A)(ii), that it is an

11:21AM   24   offense under state law, which is what we're dealing with

11:21AM   25   here, involving manufacturing, distributing, or possessing

| | | |
|---|---|---|
| 11:21AM | 1 | with intent to manufacture or distribute a controlled |
| 11:21AM | 2 | substance as defined in Section 102 of the Controlled |
| 11:21AM | 3 | Substances Act, which is 21 U.S.C. 802, for which a maximum |
| 11:21AM | 4 | term of imprisonment of ten years or more is prescribed by |
| 11:21AM | 5 | law. |
| 11:21AM | 6 | My understanding is the issue in this case is whether |
| 11:21AM | 7 | or not the statute in Michigan is broader than the federal |
| 11:22AM | 8 | statute with regard to cocaine manufacturing or possession |
| 11:22AM | 9 | with intent to distribute.  We know under this law that |
| 11:22AM | 10 | Mr. Booker is -- has been convicted of a felon in -- he is -- |
| 11:22AM | 11 | he's a felon, right.  So 922(g) applies for him, and he was a |
| 11:22AM | 12 | felon in possession of ammo, so that counts. |
| 11:22AM | 13 | And then we look to the definitions of controlled |
| 11:22AM | 14 | substances and what is illegal under state and federal law |
| 11:22AM | 15 | with regard to cocaine.  And under federal law, 21 U.S.C. 802, |
| 11:22AM | 16 | it talks about what a controlled substance is.  Under 21 |
| 11:22AM | 17 | U.S.C. 802(6), the term controlled substance means a drug or |
| 11:23AM | 18 | other substance or immediate precursor included in Schedule |
| 11:23AM | 19 | II, which is relevant for us, of this subchapter.  All right. |
| 11:23AM | 20 | So then we go to controlled subsection [sic] II. |
| 11:23AM | 21 | There is state, here is state, and here is federal.  So we're |
| 11:23AM | 22 | getting to the heart of it.  So what we're asked to evaluate |
| 11:23AM | 23 | under the law is whether or not the definition of cocaine |
| 11:23AM | 24 | under the state law, which is MCL 333.7401, which Mr. Booker |
| 11:24AM | 25 | has been convicted of three times previously -- I have the |

11:24AM  1    years, but it's not relevant at this point.

11:24AM  2         And it states that a person shall not manufacture or

11:24AM  3    possess with intent to deliver a controlled substance under

11:24AM  4    740 -- 333.7401 subsection -- paragraph 1, I should say, and

11:24AM  5    paragraph 2(a) describes that as a Schedule I or II substance

11:24AM  6    as defined in MCL 7214(a)(iv).  And we go to that definition,

11:24AM  7    and we're going to talk about that in a minute.

11:24AM  8         And we talk about federal law, and federal law has

11:24AM  9    two relevant provisions that are subject to our discussion

11:25AM  10   today.  And one is 21 U.S.C. 812(c) of Schedule II(a)(5),

11:25AM  11   which gives a definition of what is illegal under federal law.

11:25AM  12        Also relevant is 21 CFR 1308.12 subsection Schedule

11:25AM  13   II(b)(4)(ii), and that talks about the fact that

11:25AM  14   [123I]ioflupane as of September 2015 is no longer deemed a

11:25AM  15   controlled substance federally based on its characteristics

11:25AM  16   and its nature, which leads us to the argument that I'm going

11:25AM  17   to allow the parties to weigh in on, but I want to let you

11:25AM  18   know where I am so that you can focus your argument

11:25AM  19   accordingly.

11:25AM  20        In preparation for today, as I mentioned, I read the

11:25AM  21   testimony of Dr. Denmark and Dr. Dudley.  I also read the

11:26AM  22   rulings of my colleagues and one from the Eastern District.  I

11:26AM  23   read Judge Jarbou's ruling in *United States of America v.*

11:26AM  24   *Diquan Lamont Carter*, Case No. 1:21-cr-03.  Specifically she

11:26AM  25   ruled at the September 14, 2021, sentencing hearing on pages

11:26AM  1   20 and 21, and she deemed the definitions to be different.

11:26AM  2   She concluded that Michigan's definition of cocaine was

11:26AM  3   broader than the definition at the federal level, and so she

11:26AM  4   did not apply the Armed Career Criminal Act.

11:26AM  5           Time marched on, and the Government went and got an

11:26AM  6   expert.  The prior expert was Dr. Dudley.  The Government got

11:26AM  7   an expert by the name of Dr. Denmark.  Both experts are

11:27AM  8   exceptionally well qualified, both of them went to MIT and

11:27AM  9   other institutions, and their testimony was exceptionally

11:27AM  10  helpful and interesting and credible; both of them.

11:27AM  11          The issue then was put in front of Judge Paul Maloney

11:27AM  12  on March 23, 2022.  He had the opportunity to have in front of

11:27AM  13  him the testimony of these two experts.  He listened to them,

11:27AM  14  he listened to their analysis, and he determined that

11:27AM  15  Dr. Denmark, who identified the word geometric isomer as a

11:27AM  16  term that is synonymous with stereoisomers -- and

11:27AM  17  stereoisomers is a relatively newer term.  A geometric isomer

11:27AM  18  is a relatively older term.  The term stereoisomer, which is

11:28AM  19  set forth in Michigan's definition, and, again, we'll get into

11:28AM  20  this, includes all eight of the isomers present in cocaine,

11:28AM  21  including the six diastereomers, and forgive me on

11:28AM  22  pronunciation.

11:28AM  23          Dr. Dudley stated that geometric isomers are limited

11:28AM  24  and that they are -- they only include -- I'm going to get the

11:28AM  25  pronunciation right.  Basically, he contends that they do not

| | | |
|---|---|---|
| 11:28AM | 1 | include the diastereomers -- diastereomers -- because of the |
| 11:29AM | 2 | nature of what a geometric isomer is and the way it is set up |
| 11:29AM | 3 | with rings and bonds, and I'm not going to dive down yet to |
| 11:29AM | 4 | that.  Let's go up again. |
| 11:29AM | 5 | Judge Maloney found Dr. Denmark's testimony to be the |
| 11:29AM | 6 | most credible on the interpretation of the vocabulary.  He |
| 11:29AM | 7 | applied the Armed Career Criminal Act in Mr. James Earl |
| 11:29AM | 8 | Robinson's case, which is Case No. 1:21-cr-118.  He did the |
| 11:29AM | 9 | same thing again in *United States v. Johnson*, which was 21- |
| 11:29AM | 10 | cr-34, on July 11th of 2022. |
| 11:29AM | 11 | Judge Neff handled the same issue on Thursday May 12, |
| 11:30AM | 12 | 2022.  She also dealt with the ioflupane issue, and she ruled |
| 11:30AM | 13 | in *United States of America v. Idris Quintell Wilkes* that |
| 11:30AM | 14 | Dr. Denmark's testimony had the greater credibility, and she |
| 11:30AM | 15 | applied that Armed Career Criminal Act, and that was 1:21-cv- |
| 11:30AM | 16 | [sic] 42. |
| 11:30AM | 17 | Finally, and most importantly, the case that I read, |
| 11:30AM | 18 | which I think covers all of the bases of the arguments of the |
| 11:30AM | 19 | parties today, analyzes both issues that are pending before |
| 11:30AM | 20 | the Court:  The ioflupane and -- first, and then the |
| 11:30AM | 21 | stereoisomer's issue second. |
| 11:30AM | 22 | I'm going to let the parties argue, but in the case |
| 11:30AM | 23 | of *United States v. Taylor*, Case No. 20-cr-20449, and that is |
| 11:31AM | 24 | on Westlaw now, but that was entered on August 17, 2022.  So |
| 11:31AM | 25 | it's relatively recent.  It's a very comprehensive written |

11:31AM 1    opinion about the analysis of both of those issues.  And I

11:31AM 2    could read it into the record, but I'm not going to.  I'm

11:31AM 3    going to basically tell you that my thought process at this

11:31AM 4    time is exactly as Judge Paul Borman found in that case.

11:31AM 5         So before I go any further, I'm going to turn it over

11:31AM 6    for purposes of oral argument.  The Defense has raised this

11:31AM 7    issue as to whether the Armed Career Criminal Act applies.

11:31AM 8    They've raised the two issues about the definitions and

11:31AM 9    whether Michigan is broader than federal law on cocaine and

11:31AM 10   whether ioflupane, because it's not illegal in the federal

11:32AM 11   system, is inconsistent and that Michigan is, therefore,

11:32AM 12   again, broader than the federal statute.

11:32AM 13        Mr. Fisher, would you like to make argument at this

11:32AM 14   time?

11:32AM 15        MR. FISHER:  Your Honor, I believe it's the

11:32AM 16   Government's burden to prove that the enhancement applies.  So

11:32AM 17   it probably would be proper for --

11:32AM 18        THE COURT:  I do remember that from your debate with

11:32AM 19   Judge Maloney on who had to brief first.

11:32AM 20        MR. FISHER:  I would say that Mr. Robinson's case was

11:32AM 21   about the career offender guidelines, just to be clear.

11:32AM 22        THE COURT:  It was.  You are correct.  And I know

11:32AM 23   that you made that distinction in your brief as well.  Yes.

11:32AM 24   Thank you.

11:32AM 25        Would you like to argue, then, whoever on --

| | | |
|---|---|---|
| 11:32AM | 1 | MS. DALZELL:  Yes, Your Honor. |
| 11:32AM | 2 | THE COURT:  Ms. Dalzell. |
| 11:32AM | 3 | MS. DALZELL:  As Your Honor indicated, the Court is |
| 11:32AM | 4 | very familiar with the record here, of course, and as well as |
| 11:32AM | 5 | all the prior decisions from other judges in this district and |
| 11:32AM | 6 | in the Eastern District, so I will try not to be redundant.  I |
| 11:33AM | 7 | would note, first, that this week we have had two new |
| 11:33AM | 8 | developments as well.  Judge Jarbou -- Chief Judge Jarbou |
| 11:33AM | 9 | heard a case called Nettles, and that is record number -- er, |
| 11:33AM | 10 | Docket No. 1:21-cr-29, and that was this Wednesday.  And this |
| 11:33AM | 11 | is the first case that Chief Judge Jarbou has had in which |
| 11:33AM | 12 | she's had testimony from both parties' experts.  And in light |
| 11:33AM | 13 | of that, she did change her view from the *Carter* case, and she |
| 11:33AM | 14 | ruled in the Government's favor and applied the enhancement, |
| 11:33AM | 15 | which in that case was career offender. |
| 11:33AM | 16 | First she held that no match was required between the |
| 11:33AM | 17 | state and federal schedules for the career offender |
| 11:33AM | 18 | enhancement, and, in the alternative, she held that the |
| 11:33AM | 19 | Michigan and federal cocaine definitions were co-extensive. |
| 11:33AM | 20 | THE COURT:  What was the first thing that she found |
| 11:33AM | 21 | did you say? |
| 11:33AM | 22 | MS. DALZELL:  For the career offender enhancement |
| 11:33AM | 23 | under the guidelines, there is a preliminary question of |
| 11:34AM | 24 | whether there is even a match required between the state and |
| 11:34AM | 25 | federal schedules. |

| | | |
|---|---|---|
| 11:34AM | 1 | THE COURT:  I see. |
| 11:34AM | 2 | MS. DALZELL:  So she said, no, no match is required, |
| 11:34AM | 3 | but even if there were one, in the alternative, she held that |
| 11:34AM | 4 | there is a match here. |
| 11:34AM | 5 | THE COURT:  So kind of dicta, kind of -- |
| 11:34AM | 6 | MS. DALZELL:  Right.  Right.  But to the extent we're |
| 11:34AM | 7 | going to talk about *Carter*, I think that's relevant. |
| 11:34AM | 8 | The other new development is just yesterday |
| 11:34AM | 9 | Judge Roberts in the Eastern District also ruled for the |
| 11:34AM | 10 | Government on the cocaine isomer's issue holding that the |
| 11:34AM | 11 | state and federal cocaine definitions are -- reach the same |
| 11:34AM | 12 | substances, and that case was *United States v. Hinds*, and the |
| 11:34AM | 13 | case number is 18-cr-20533.  So I would provide those updates. |
| 11:34AM | 14 | As to the substance, I'll talk about geometric |
| 11:34AM | 15 | isomers first.  And, just very briefly, as this Court has |
| 11:34AM | 16 | noted, several judges now have found the testimony of |
| 11:35AM | 17 | Dr. Denmark more credible on this issue, and it makes sense. |
| 11:35AM | 18 | Here, we have two, of course, well qualified experts providing |
| 11:35AM | 19 | opinions.  One expert's opinion is consistent with what |
| 11:35AM | 20 | congress did, and that is Dr. Denmark's. |
| 11:35AM | 21 | The Defense reading of geometric isomer would read |
| 11:35AM | 22 | the word geometric out of the statute.  As we said in our |
| 11:35AM | 23 | brief, congress went out of its way to add the word geometric |
| 11:35AM | 24 | for cocaine isomers, and congress obviously thought that |
| 11:35AM | 25 | cocaine had geometric isomers. |

| 11:35AM | 1 | The DEA, Drug Enforcement Administration, is the |
|---|---|---|

11:35AM  1    The DEA, Drug Enforcement Administration, is the

11:35AM  2    administrator of the schedules, and contemporaneously with

11:36AM  3    congress's addition of the definition for isomer in 1984, in

11:36AM  4    1986 the DEA added the definition to the Code of Federal

11:36AM  5    Regulations.  And in its notice of proposed rule making, it

11:36AM  6    enumerated all of the cocaine isomers that would be covered

11:36AM  7    under the terms optical or geometric that congress used, and

11:36AM  8    it, in fact, listed all six cocaine diastereomers that are in

11:36AM  9    dispute in this case.

11:36AM  10   So we know that congress thought that geometric

11:36AM  11   isomers existed for cocaine.  We know that the DEA thought

11:36AM  12   that they included these six isomers that are at dispute here.

11:36AM  13   We also know that the case law in the 1980s -- we cited one of

11:36AM  14   the cases in our brief -- *Bockius* identified, I believe, eight

11:36AM  15   cocaine isomers that were at issue.  Defendants at that time

11:36AM  16   were frequently raising the cocaine isomer defense, saying

11:37AM  17   "You can't prove that I was trafficking cocaine specifically.

11:37AM  18   It could have been an isomer for all anyone knows."

11:37AM  19   And we know that one of the purposes of congress's

11:37AM  20   addition of the isomer definition was to eliminate that

11:37AM  21   defense, and cases at the time show that courts understood

11:37AM  22   there to be eight cocaine isomers.  So the context --

11:37AM  23   THE COURT:  The experts agree, right?

11:37AM  24   MS. DALZELL:  Pardon me?

11:37AM  25   THE COURT:  Denmark and Dudley both agree that there

11:37AM  1    are eight.

11:37AM  2         MS. DALZELL:  Yes, yes.  They both agree.  But that

11:37AM  3    just shows it supports Dr. Denmark's conclusion that the term

11:37AM  4    geometric isomers covers those six diastereomers, and then we

11:37AM  5    have cocaine and its optical isomer.  So together the terms

11:37AM  6    optical and geometric cover all of the stereoisomers that

11:37AM  7    Michigan's statute refers to.  So with all of that evidence,

11:37AM  8    Dr. Denmark's testimony is more credible in this instance.

11:38AM  9         With respect to ioflupane, I would also note, and I

11:38AM  10   -- there are so many cases.  I'm forgetting whether *Clark*, the

11:38AM  11   Sixth Circuit recent decision, had been decided at the time

11:38AM  12   that Judge Borman ruled.  But we now have the *Clark* decision

11:38AM  13   from the Sixth Circuit which applies a time of conviction rule

11:38AM  14   instead of a time of sentencing rule.  And the Defense argues

11:38AM  15   here that that is distinguishable from this circumstance

11:38AM  16   because, of course, *Clark* involved the career offender

11:38AM  17   enhancement under the guidelines whereas this is the Armed

11:38AM  18   Career Criminal Act, but there is no meaningful distinction

11:38AM  19   between these scenarios.

11:38AM  20        And, in fact, the *Clark* decision makes clear that its

11:38AM  21   logic would apply to ACCA.  The *Clark* panel, in fact, cited

11:38AM  22   the 11th Circuit's decision in *Jackson*, which reached a time

11:38AM  23   of sentencing rule for the ioflupane issue in that case.  The

11:39AM  24   *Clark* panel disagreed with that showing that the *Clark* panel

11:39AM  25   would believe that its rule also applies in the ACCA context.

11:39AM 1          Of course, the *Clark* panel also cited the Supreme

11:39AM 2     Court's decision in *McNeill*, which applied a time of

11:39AM 3     conviction rule in the ACCA context specifically.

11:39AM 4          THE COURT:  Here, don't we have convictions that

11:39AM 5     precede 2015 anyway; 2007, 2008, in --

11:39AM 6          MS. DALZELL:  Yes.  Mr. Booker had --

11:39AM 7          THE COURT:  -- addition to the 2018?

11:39AM 8          MS. DALZELL:  Yes.  We have -- he has three cocaine

11:39AM 9     convictions.  One is in 2007.  One is in 2008.  One is in

11:39AM 10    2018.  So the ioflupane issue is a little bit different for

11:39AM 11    that 2018 conviction.  I would say the Court doesn't even need

11:39AM 12    to reach that issue because even without it, he has three

11:39AM 13    prior predicates for ACCA.

11:39AM 14         THE COURT:  Right.

11:39AM 15         MS. DALZELL:  But if the Court did consider it,

11:39AM 16    Michigan separately has a statute that incorporates all of the

11:39AM 17    federal exceptions.  So Michigan law would have been

11:40AM 18    co-extensive with federal with respect to ioflupane at that

11:40AM 19    time of that conviction also.

11:40AM 20         Aside from *Clark*, I think, as Judge Borman concluded,

11:40AM 21    and as other judges have concluded, including Judge Neff and

11:40AM 22    Judge Maloney, there is just no realistic probability of

11:40AM 23    prosecution based on ioflupane.  There have been debates in

11:40AM 24    the case law about when exactly the realistic probability

11:40AM 25    analysis is permissible.  Some cases have said it is not

11:40AM  1  permissible when the state statute is overbroad on its face.

11:40AM  2  That is not the case here.

11:40AM  3          The case here is that Michigan statute covers coca

11:40AM  4  leaves and their derivatives.  And so that's not clear on its

11:40AM  5  face whether ioflupane counts because, in fact, Michigan

11:40AM  6  courts have in the past disputed how to interpret the word

11:40AM  7  derivative.

11:40AM  8          In addition, there is the statute that we cite in our

11:40AM  9  brief that allows an exemption from the schedule for

11:41AM  10  substances that have no abuse potential.  So just looking at

11:41AM  11  the face of the statutes here, it is not clear facially that

11:41AM  12  Michigan's statute is overbroad, but --

11:41AM  13          THE COURT:  That's 333.7214(a)(iv).

11:41AM  14          MS. DALZELL:  I believe so.

11:41AM  15          THE COURT:  Oh, no.  I have that wrong.

11:41AM  16          MS. DALZELL:  It's in our brief.

11:41AM  17          THE COURT:  I know what you're talking about here.

11:41AM  18          MS. DALZELL:  And I can pull that cite when I sit

11:41AM  19  back down too for the Court, if that would be helpful.

11:41AM  20          THE COURT:  It's 333.7227(1).

11:41AM  21          MS. DALZELL:  Yes.

11:41AM  22          THE COURT:  Right.

11:41AM  23          MS. DALZELL:  So I would say it's not overbroad on

11:41AM  24  its face, but even if it were overbroad on its face, courts

11:41AM  25  have also allowed the realistic probability analysis where the

11:41AM   1    thing that is supposedly overbroad about the state law is just

11:41AM   2    impossible.  For example, in the Ninth Circuit *Rodriguez*

11:41AM   3    *Gamboa* case, California covered geometric isomers of meth, and

11:41AM   4    the federal schedule doesn't.  The court said there is no

11:41AM   5    realistic probability based on -- of prosecution based on

11:42AM   6    geometric isomers of meth because they don't exist.

11:42AM   7         In the same way here, I would put [$^{123}$I] ioflupane in

11:42AM   8    the same box because it's radioactive.  You need a particle

11:42AM   9    accelerator to make it.  People on the street are not going to

11:42AM   10   be able to make it.  Even if they could, it has a shelf life

11:42AM   11   of 24 hours, at which point it starts to fall into radioactive

11:42AM   12   decay, and it transforms into another substance that, you know

11:42AM   13   it's not any longer at that point [$^{123}$I] ioflupane.  And, in

11:42AM   14   addition, you would need to inject such a quantity of it to

11:42AM   15   get high that that would likely kill you.

11:42AM   16        So for all of those reasons, DEA concluded

11:42AM   17   conclusively it's just not abusable.  So it's not something

11:42AM   18   anyone is going to be trafficking.  We can say categorically

11:42AM   19   that no Michigan prosecution has ever involved ioflupane, but,

11:42AM   20   taking a step back, *Clark* forecloses the ioflupane argument

11:43AM   21   anyway.

11:43AM   22        I believe unless the Court has further questions,

11:43AM   23   that is all I would say.  But I am happy to answer any

11:43AM   24   questions that come up as this continues.

11:43AM   25             THE COURT:  Thank you.

11:43AM   1        MS. DALZELL:  Thank you.

11:43AM   2        THE COURT:  Mr. Fisher.

11:43AM   3        MR. FISHER:  Thank you, Your Honor.  I think that

11:43AM   4   both parties have briefed this issue fairly thoroughly.  I

11:43AM   5   would just raise a couple of points in my rebuttal.

11:43AM   6        Dr. Denmark's conclusions, I'm going to start with

11:43AM   7   those to begin with.  Both experts agree that the

11:43AM   8   International Union of Pure and Applied Chemistry is the

11:43AM   9   source for chemistry nomenclature.  And the real issue in this

11:43AM  10   dispute is the use of chemistry nomenclature in the federal

11:43AM  11   statutes, not in the Michigan statutes.

11:43AM  12        And the question, when we are getting into the

11:43AM  13   categorical approach analysis, is whether those statutes

11:43AM  14   align.  And I think we can start from the principle first that

11:44AM  15   these statutes simply do not match on their face.  There is a

11:44AM  16   difference in the terms that are used.

11:44AM  17        Michigan statutes, as the Government notes in their

11:44AM  18   brief and in their discussion, encompasses all stereoisomers

11:44AM  19   of cocaine, whereas this federal statute, for some reason,

11:44AM  20   does not.  And I think the question that -- the Government's

11:44AM  21   position, Dr. Denmark's argument on this issue raises is where

11:44AM  22   did this language come from?  And you can look back in the

11:44AM  23   IUPAC history of their hearings and their processes in the

11:44AM  24   decisions about how to apply this nomenclature and well prior

11:44AM  25   to the 1981 and the 1984 statutes that we're dealing with

11:44AM  **1**   here, these were not terms that were used in the way the

11:44AM  **2**   Government suggest they should be here.  These are not terms

11:44AM  **3**   that IUPAC adopted in 1974, for example, when they talk about

11:44AM  **4**   cis and trans isomers and do not discuss the term geometric

11:44AM  **5**   isomers at all.

11:44AM  **6**        So we have the situation where the federal

11:45AM  **7**   government, for whatever reason, because people raising this

11:45AM  **8**   isomer objection to possession charges as a defense, adopts

11:45AM  **9**   this language that is incongruous with what chemists were

11:45AM  **10**  using at the time of the adoption of the statute, and that's

11:45AM  **11**  the core of this issue.

11:45AM  **12**       And I think when you look at what the categorical

11:45AM  **13**  approach requires is, let's look at the statutes.  It's a

11:45AM  **14**  simple and straightforward approach.  I know it is often

11:45AM  **15**  complicated and unwieldy in its execution, but when you look

11:45AM  **16**  at the statutes, the categorical approach tells us what does

11:45AM  **17**  the statute say, and these statutes say different things.

11:45AM  **18**  They do.

11:45AM  **19**       And these terms, if we look at the terms and the

11:45AM  **20**  definitions that were used at the time these statutes were

11:45AM  **21**  created, the Government cites that IUPAC's published 1996

11:45AM  **22**  version, you know, notes that these are antiquated terms, but

11:45AM  **23**  I would again turn you to the IUPAC rules for nomenclature of

11:45AM  **24**  organic chemistry that was published in 1974 well prior to the

11:45AM  **25**  1996 revisions that do not reference optical isomers or

11:45AM  1    geometric isomers in the way that Dr. Denmark relies upon in

11:46AM  2    his opinion.  So this is an issue that is not at all clear to

11:46AM  3    me that this was appropriate usage at the time that congress

11:46AM  4    wrote this statute.

11:46AM  5         Then the question becomes, when we're looking at the

11:46AM  6    categorical approach analysis, do we use the facial language

11:46AM  7    of the statutes and the definitions that are incorporated in

11:46AM  8    those statutes and then stop the inquiry there, or do you look

11:46AM  9    beyond it, as the Government suggests, with this functional

11:46AM  10   approach?  And I think the answer should be no because that

11:46AM  11   really in many ways violates the entire spirit of the

11:46AM  12   categorical approach.

11:46AM  13        What we're looking at is not the facts of the

11:46AM  14   underlying conviction.  The Court is not asking if in one of

11:46AM  15   these previous convictions if Mr. Booker was possessing

11:46AM  16   ioflupane or not.  The Court is looking at what the elements

11:46AM  17   of the law are.  And I think that is where we differ in terms

11:46AM  18   of our opinions about how the Court should understand the

11:46AM  19   analysis here under the categorical approach and the

11:46AM  20   terminology and the nomenclature that chemists have used and

11:46AM  21   then for some reason congress adopted even though at the same

11:47AM  22   time Michigan contemporaneously was using different terms to

11:47AM  23   describe the same things, and that contrast, I think, is what

11:47AM  24   is warranted -- you know, the rule of lenity applying to this

11:47AM  25   case in Mr. Booker's favor.  Thank you.

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | THE COURT:  Thank you.                                               |
| 11:47AM | 2  | MR. FISHER:  Any questions?                                       |
| 11:47AM | 3  | THE COURT:  I'll try -- I don't have any questions.              |
| 11:47AM | 4  | MR. FISHER:  All right.                                           |
| 11:47AM | 5  | THE COURT:  Thank you.                                            |
| 11:47AM | 6  | MR. FISHER:  All right.                                           |
| 11:47AM | 7  | THE COURT:  I'll try to be as clear and concise as I             |

can in my ruling to this.  With regard to the applicability --
hang on a minute here.  All right.  With regard to the
applicability of the Armed Career Criminal Act, I do find that
it is applicable here.  The two issues that have been raised
by the Court is whether or not the -- sorry.  I've moved
everything around.  Hang on a minute here.  Just a minute.

The issue is whether or not for a serious drug
offense the two definitions in federal and state law, although
they may use different words and one would argue that a
categorical approach of element by element would have them be
different.  I agree with the analysis by predecessors on this
issue, including Judge Borman, and citing to other cases that
in a situation in which a state statute is divisible when it
includes multiple ways in which one can be convicted of the
same statute when there are alternative elements, one uses a
modified categorical approach.

And so we take a look at the definitions of -- the
federal definition of cocaine.  We take a look at the state

definition of cocaine.  And if I were to conclude that the

word geometric isomers is not the same thing as stereoisomers,

I would conclude that the Michigan statute is broader than the

federal statute, and I would not apply it.  But having looked

at the analysis by Dr. Denmark and Dr. Dudley about the

evolution of terms in science in stereochemistry, they agree

that the word stereoisomers includes all eight stereoisomers

of cocaine because Michigan says it includes stereoisomers.

So that covers everything in cocaine, right, and so what

you're looking at is R-cocaine, cocaine, S-cocaine, cocaine

enantiomers, and then the six diastereomers.  An enantiomer is

the optical mirror, right, so that's S-cocaine.  And then you

have these six diastereomers:  Pseudococaine, R-pseudococaine,

S-pseudococaine, R-allocaine [sic], S-allocaine [sic],

R-pseudoallococaine and R-allopseudococaine.

        So Michigan includes all those.  And the issue is

does the federal laws -- we know it includes cocaine in the

federal law statute.  We know it includes the optical isomer,

the antiomer, but the issue is, does the word geometric isomer

include the six diastereoisomers that I just identified?

        And, according to Dr. Dudley -- er, excuse me, to

Dr. Denmark in the past geometric was used to refer more

narrowly to cis-trans isomers.  That's true, right, and that's

what Dr. Dudley talks about, and he refers to that in the

IUPAC Gold Book.  And Dr. Dudley says it's an older and

11:52AM   **1**    obsolete term for a subset of diastereomers called cis-tran

11:52AM   **2**    isomers, but Dr. Denmark says that that is no longer the

11:52AM   **3**    prevailing understanding.  And he describes that it's now

11:52AM   **4**    understood to be synonymous with diastereomers of any isomer

11:52AM   **5**    other than the optical mirror image.  That it's the isomers

11:52AM   **6**    that share -- the stereoisomers that share the same

11:52AM   **7**    connectivity but have atoms arranged differently in space, and

11:52AM   **8**    he talked about the bonds and the rings.  And that even though

11:52AM   **9**    there may be more than two which was set forth typically in

11:52AM   **10**   your cis-trans opposite sides, it's now referred more broadly

11:52AM   **11**   to any time you have those same arrangements, but you can just

11:52AM   **12**   identify more specifically the cis and the trans that

11:53AM   **13**   differentiate those stereoisomers or isomers from one another.

11:53AM   **14**        The pages in which I found helpful from the testimony

11:53AM   **15**   -- well, I won't get into it, but Dr. Denmark describes why

11:53AM   **16**   those are the same.  He also argues -- when Lauren Biksacky

11:53AM   **17**   asks -- the Government's attorney -- "Even if your definition

11:53AM   **18**   applies as it's meant for cis-trans stereomers [sic] only --

11:53AM   **19**   er, isomers only, would they this apply in this case?"

11:53AM   **20**        And doctor -- both doctors said yes, right?  It would

11:53AM   **21**   apply given the nature of cocaine.  It would apply to cocaine.

11:53AM   **22**   And if one were to apply Dr. Denmark's definition, the word

11:53AM   **23**   geometric isomers would mean nothing in the world of cocaine

11:54AM   **24**   because there is no such composition of the cis-trans

11:54AM   **25**   description in cocaine.  So it would render the statute with

11:54AM  **1**    regard to cocaine nonsensical, and that's not consistent with

11:54AM  **2**    the 1984 congress passing these regulations and trying to

11:54AM  **3**    include additional definitions of cocaine in order to capture

11:54AM  **4**    and avoid these -- these semantics.

11:54AM  **5**         So I agree with Dr. Denmark and his analysis.  And I

11:54AM  **6**    find it's reasonable under these circumstances.  And I adopt

11:54AM  **7**    as my deeper analysis that which was set forth by Dr. Bor --

11:54AM  **8**    -- er, Judge Borman in *United States v. Taylor*, 20-cr20449.

11:54AM  **9**         With regard to [$^{123}$I] ioflupane, I don't think it's

11:54AM  **10**   necessary to address here.  Mr. Booker had two offenses that

11:55AM  **11**   predate the ioflupane change pre-2015 and a home invasion.  So

11:55AM  **12**   it would count either way.  But I also agree with

11:55AM  **13**   Judge Borman's analysis on ioflupane, specifically the fact

11:55AM  **14**   that under the realistic probability analysis that had not

11:55AM  **15**   been applied in some prior cases, it would never be prosecuted

11:55AM  **16**   or could be prosecuted in the state of Michigan.  It would be

11:55AM  **17**   impossible for the reasons that Ms. Dalzell talked about, and

11:55AM  **18**   there are six of them listed in the opinion by Judge Borman

11:55AM  **19**   that makes that a realistic improbability impossibility.

11:55AM  **20**        That's a long way of saying that I believe that the

11:55AM  **21**   Armed Career Criminal Act, with respect to Mr. Booker's prior

11:55AM  **22**   Michigan cocaine delivery cases or possession with intent to

11:56AM  **23**   deliver, apply here.

11:56AM  **24**        Are there any remarks that counsel wish to make at

11:56AM  **25**   this time on that topic?

11:56AM  1      MR. HAKES:  None from the Government, Your Honor.

11:56AM  2      MS. NIEUWENHUIS:  No, Your Honor.  Thank you.

11:56AM  3      THE COURT:  Thank you for tolerating my very less

11:56AM  4  than articulate analysis there, but that's where it is.

11:56AM  5      So that takes us back to the sentencing.  All right.

11:57AM  6  I'm going to calculate the offense level.  We're going to deal

11:57AM  7  with the offense level calculation and the criminal history

11:57AM  8  category, which helps us ascertain the appropriate guidelines

11:57AM  9  sentence recommendation in this case.

11:58AM  10      I agree with the analysis on page 22 of the

11:58AM  11  presentence report, specifically paragraphs 88 through 99,

11:58AM  12  with regard to the Count 1 group of these three offenses.  The

11:58AM  13  base offense normally would be level 20, but because of the

11:58AM  14  Chapter 4 enhancement that we've been talking about, pursuant

11:58AM  15  to 18 U.S.C. 924(e), we have to go right to 34, right?  And

11:58AM  16  that is USSG 4B1.4(b)(3)(A).  So instead of the 20 and going

11:58AM  17  down to 17, if were to do acceptance of responsibility on this

11:58AM  18  the third level, we go to 34 in the guidelines scoring.

11:58AM  19      Then with regard to acceptance of responsibility --

11:58AM  20  so we're starting with 34.  I do find that acceptance of

11:59AM  21  responsibility applies, and that takes us down to 32.

11:59AM  22      Does the Government move for the third level of

11:59AM  23  acceptance of responsibility?

11:59AM  24      MR. HAKES:  It does, Your Honor.

11:59AM  25      THE COURT:  All right.  So that takes us down to an

| | |
|---|---|
| 11:59AM | **1** |
| 11:59AM | **2** |
| 11:59AM | **3** |
| 11:59AM | **4** |
| 11:59AM | **5** |
| 11:59AM | **6** |
| 11:59AM | **7** |
| 11:59AM | **8** |

offense level of 31.  With regard to the criminal history
category, I also agree with the presentence report's analysis
that there are eight points under the subtotal of the criminal
history score based on Mr. Booker's prior convictions.  Two
points are added because he committed the instant offense
while under a criminal justice sentence for delivery of --
manufacturing less than 50 grams.  So that's an additional two
points.

So the criminal history category score is ten, which
would normally be a Chapter V criminal history category, but
because Mr. Booker is an armed career criminal, we -- we have
to use the greatest criminal history category applicable under
the guidelines, which is category VI.  So with those two
findings, offense level of 31 and a criminal history category
of VI, the guidelines under the guidelines manual is
188 months to 235 months.

With regard to the range that this Court could
sentence today, the max -- excuse me, the minimum term of
imprisonment under Count 1 is five years and the maximum is
40.  For Count 2, the maximum term is 20 years; and for
Count 3, the minimum term is 15 years; and the maximum term is
life.  The guidelines, as I mentioned, is 188 to 235 months.

With regard to supervised release under Count 1, it's
a minimum of four years for supervised release; with regard to
Count 2, it's a minimum term of at least three years; and with

12:01PM  1    regard to Count 3, it's a maximum term of not greater than

12:01PM  2    five years.  And I would impose -- whatever I decide I would

12:01PM  3    impose those concurrently, so they overlap.  It would not be

12:01PM  4    consecutive.

12:01PM  5         The guidelines provisions put Count 1 at two to

12:01PM  6    five years, Count 2 at three years, and Count 3 of two to

12:01PM  7    five years.  I think -- actually, I think that's wrong.  The

12:01PM  8    guidelines, I think it should be four to five years for

12:01PM  9    Count 2 -- er, Count 1, excuse me, because it's a minimum of

12:01PM  10   four.  It says on paragraph 162, two to four years -- two to

12:01PM  11   five years, but I think it's four to five years.

12:01PM  12        With regard to probation, by statute Mr. Booker is

12:02PM  13   not applicable here and by guidelines as well.

12:02PM  14        With regard to fines, with regard to Count 1, the

12:02PM  15   maximum fine is 5 million.  Count 2, a million.  Count 3,

12:02PM  16   $250,000.  And so the guideline range for the fine in these

12:02PM  17   group convictions is 30,000 to $6 million.

12:02PM  18        Mandatorily, there is a special assessment of $100

12:02PM  19   for every count of convictions, and that's three here.  So

12:02PM  20   that would be $300.  Restitution is not applicable here.

12:02PM  21        I don't see any applicable departures either, and so

12:02PM  22   that brings us to allocution.

12:02PM  23        Ms. Nieuwenhuis, would you like to make some remarks?

12:02PM  24        MS. NIEUWENHUIS:  Yes, Your Honor.  I'll have

12:03PM  25   Mr. Booker come up as well.

12:03PM  1          THE COURT:  Sure.

12:03PM  2          MS. NIEUWENHUIS:  Your Honor, although the Court has

12:03PM  3  ruled against us regarding the armed career criminal status, I

12:03PM  4  do want to thank the Court for taking all the time.  I know

12:03PM  5  digging through this was probably not your most enjoyable

12:03PM  6  time.

12:03PM  7          I do want to really talk about who the Court is

12:03PM  8  sentencing here today.  I've been with this case now for

12:03PM  9  almost two years.  It has a very long history.  I've gotten to

12:03PM  10  know Mr. Booker very well.  We've had many conversations.  And

12:03PM  11  I am asking the Court -- I know the Court's hands are tied as

12:04PM  12  far as the mandatory minimum here is 15 years, and I think

12:04PM  13  15 years is more than sufficient for Mr. Booker under all the

12:04PM  14  facts and circumstances of this case and the facts and

12:04PM  15  circumstances of Mr. Booker personally.

12:04PM  16          I'd like to point out Mr. Booker has been

12:04PM  17  incarcerated at the Newaygo County Jail since November 22nd of

12:04PM  18  2020.  He's been there almost going on two years.  It's

12:04PM  19  incredible in my opinion that he's had no write-ups.

12:04PM  20          He's had no issues at the jail.  He's had the stress,

12:04PM  21  of course, of this kind of time hanging over his head and all

12:04PM  22  the kind of valleys and peaks that we've gone through in this

12:04PM  23  case.  And I am asking the Court to take that into

12:04PM  24  consideration because I have many clients who really aren't

12:04PM  25  capable of doing a few months there and run into issues.  And

12:05PM   1    so I am asking the Court to take a look at that along with all

12:05PM   2    of the other things that I'd like to address today.

12:05PM   3         Mr. Booker is thirty-three.  He has two children, who

12:05PM   4    he is close to.  He was very close to his stepfather, Barth

12:05PM   5    Matthews, who very unfortunately passed away when Mr. Booker

12:05PM   6    was young.  And then he got involved with the codefendant,

12:05PM   7    Mr. Johnson, who really was like a stepfather to him.  And I

12:05PM   8    know that although the Court must give 15 years on this case,

12:05PM   9    I do want the Court taking a look at, so we do not have a

12:05PM   10   disparity in sentencing, Mr. Johnson was sentenced to ten

12:05PM   11   years, which I believe was his mandatory minimum on his case.

12:06PM   12   And he really had a pivotal role in Mr. Booker's personal life

12:06PM   13   as well as being a codefendant in this case.

12:06PM   14         And I think the presentence report, I think,

12:06PM   15   carefully laid out Mr. Johnson's involvement in this case.

12:06PM   16   And I think that when we look at it, Mr. Booker's involvement

12:06PM   17   was a very short period of time comparatively to the other

12:06PM   18   codefendants.  I believe it comes to a little less than

12:06PM   19   approximately, I would say, two months.

12:06PM   20         And he really was a courier.  He was a courier

12:06PM   21   between Mr. Cartwright and Mr. Johnson, who, as I pointed out,

12:06PM   22   was his stepfather.  And I am asking the Court to also take

12:06PM   23   that into consideration.  I think it's pretty clear from the

12:06PM   24   facts of the case that Mr. Booker did not really receive

12:07PM   25   payment or anything else in regards to being a courier under

12:07PM  1    this scenario.  He bought himself 15 years.  That is true.

12:07PM  2          He very unfortunately, in my opinion knowing

12:07PM  3    everything I know about this case, I really believe that

12:07PM  4    Mr. Booker got involved and really couldn't get out.  And that

12:07PM  5    although, admittedly, he has a prior record, I think if we

12:07PM  6    look very strongly at that prior record, especially the older

12:07PM  7    cases of the -- what's listed as drug dealing or deliveries,

12:07PM  8    those were very small amounts, and they took place a long time

12:07PM  9    ago; 2007, 2008, and even his sentences I think in the state

12:07PM  10   court reflected that.

12:07PM  11         He did not go to prison on those cases, and I'm glad

12:07PM  12   for Mr. Booker that he did not, but when he stands here today

12:08PM  13   the terrific enhancement of his penalties compared to what the

12:08PM  14   true guidelines under this scenario would be are almost

12:08PM  15   astounding.  And so I am asking the Court to sentence him to

12:08PM  16   the mandatory minimum that we recognize the Court must do

12:08PM  17   under this scenario.

12:08PM  18         There is one other thing I would like to address, and

12:08PM  19   that is the Government points out this conversation and that

12:08PM  20   Mr. Booker allegedly, according to them, was going out to kill

12:08PM  21   somebody and get this gun in conjunction with that.  There

12:08PM  22   were many things said in this case and many things done in

12:08PM  23   this case that the Government believed or thought to be the

12:08PM  24   case that turned out was not the case.

12:08PM  25         And in this case, I can only say that I think

12:09PM  **1**  Mr. Booker's commentary really was meant for some other people

12:09PM  **2**  in the case so that people would know that he was armed.  And

12:09PM  **3**  that's really all I want to say further about that.  But I am

12:09PM  **4**  asking the Court to take a more jaundice look, I guess, at

12:09PM  **5**  that version of supposedly what that really means.  I think in

12:09PM  **6**  the context, it does not mean that.

12:09PM  **7**        Looking specifically, again, at Mr. Booker himself,

12:09PM  **8**  he does have a learning disability.  He had special education

12:09PM  **9**  when he went to school.  He did earn a high school diploma in

12:09PM  **10** spite of that, and we are asking the Court to take all of

12:09PM  **11** these things into consideration.

12:09PM  **12**       I mean, clearly he can't get a minor role, but I

12:09PM  **13** think there could have been some arguments without the armed

12:09PM  **14** career criminal designation that I think his involvement in

12:10PM  **15** the case was less than some.  And to think that Mr. Johnson is

12:10PM  **16** doing five years less than what Mr. Booker has to do, I really

12:10PM  **17** do think that disparity argument is really at play and should

12:10PM  **18** be looked at by the Court.

12:10PM  **19**       We are asking for the recommendations that are laid

12:10PM  **20** out in the sentencing memorandum.  He's very interested in

12:10PM  **21** culinary, welding, vocational skills.  He also needs a

12:10PM  **22** physical.  He's had some issues with his lung.  And today in

12:10PM  **23** speaking with him, I know that he and I had talked before

12:10PM  **24** about the potential of the RDAP program.  And I know that

12:10PM  **25** currently he probably would not get the special good time

12:10PM  1   involved in RDAP, but I really think Mr. Booker would be an

12:10PM  2   excellent candidate for RDAP.

12:10PM  3          And if it changes, then he gets credit, that's great,

12:11PM  4   but if not, I think the real force behind the RDAP program is

12:11PM  5   really made for somebody like Mr. Booker to turn his life

12:11PM  6   around.  He knows he has to do it, he wants to do it, and I

12:11PM  7   think with help he can do it.  He's not just this person that

12:11PM  8   we see in his criminal history category.  I can assure the

12:11PM  9   Court of that.  And unless the Court had any questions, I

12:11PM  10  think that was what I wanted to say, Your Honor.

12:11PM  11         THE COURT:  Thank you.

12:11PM  12         Mr. Booker.

12:11PM  13         THE DEFENDANT:  I just want to take full

12:11PM  14  responsibility for my actions, and I feel like I let my family

12:11PM  15  down, and I'm sorry to continue to contribute to the drug

12:11PM  16  problem in my community.  I feel like I let -- I followed the

12:12PM  17  wrong role models, and I just -- I made a terrible mistake,

12:12PM  18  and I just want a chance to be able to turn around and fix the

12:12PM  19  people in my family below me, and hopefully they don't have to

12:12PM  20  go through the same thing I went through.  I just want to say

12:12PM  21  I apologize and ask that the Court to have some mercy on me.

12:12PM  22  That's all.

12:12PM  23         THE COURT:  Thank you.

12:12PM  24         Government.

12:12PM  25         MR. HAKES:  Your Honor, I submit to the Court that

12:12PM  1    while Mr. Booker may have been courier in this drug

12:12PM  2    conspiracy, he was also the wild card, and he deserves to be

12:12PM  3    treated accordingly.

12:12PM  4           It is certainly to his credit that since being

12:13PM  5    charged in this case, he did plead guilty and did accept

12:13PM  6    responsibility and has conducted himself appropriately while

12:13PM  7    awaiting sentencing, which he's been waiting for a long time,

12:13PM  8    and so this isn't just a couple of months of good behavior.

12:13PM  9           Certainly the Court should consider that he has shown

12:13PM  10   -- demonstrated commitment to good behavior while incarcerated

12:13PM  11   for a quite lengthy period before arriving at this day.  But

12:13PM  12   he is -- he's already received credit for that in the way that

12:13PM  13   his guidelines have been changed.  The drop of three levels

12:13PM  14   from where he was otherwise -- would otherwise be scored is

12:13PM  15   significant.  It's a significant benefit that is appropriately

12:13PM  16   accrued to him.  His range --

12:13PM  17          THE COURT:  That applies to his acceptance of

12:13PM  18   responsibility, not the fact that he's had good behavior while

12:13PM  19   incarcerated?

12:13PM  20          MR. HAKES:  I think it does weigh towards obviously

12:13PM  21   the first thing acceptance of responsibility, but to be

12:13PM  22   eligible for those points, one cannot engage in obstructive

12:14PM  23   behavior --

12:14PM  24          THE COURT:  True.

12:14PM  25          MR. HAKES:  -- in order to qualify for them.  So I

12:14PM   **1**    submit to the Court that they're really incorporated within

12:14PM   **2**    that.  And also we expect people to, you know, follow the

12:14PM   **3**    rules once they're locked up.  And so to the extent that we

12:14PM   **4**    would try to give even credit beyond acceptance of

12:14PM   **5**    responsibility for someone who's done what should be the

12:14PM   **6**    baseline of behavior, I think that would, you know, pervert

12:14PM   **7**    the incentives and the expectations that we want to have when

12:14PM   **8**    people enter an incarcerated environment.

12:14PM   **9**        His guidelines without that acceptance of

12:14PM   **10**   responsibility credit would have been 262 months to

12:14PM   **11**   327 months.  And so the drop now in the guidelines where the

12:14PM   **12**   upper end is at 235, while that is still a very significant

12:14PM   **13**   number, is also significantly lower by a matter of years than

12:14PM   **14**   he would otherwise have been.  And I submit that that is

12:14PM   **15**   sufficient to account for the positive factors that Defense

12:14PM   **16**   Counsel correctly identify to the Court in allocution moments

12:15PM   **17**   ago and which are laid out in the PSR.

12:15PM   **18**       But it's important to consider the history and

12:15PM   **19**   characteristics of this Defendant and the importance of

12:15PM   **20**   protecting the public from him.  That is one of the 3553(a)

12:15PM   **21**   considerations that this Court must incorporate in crafting an

12:15PM   **22**   appropriate sentence here.

12:15PM   **23**       There are not many things that trip a wire.  So in

12:15PM   **24**   Title III investigations, the phrase "trip the wire" means an

12:15PM   **25**   event so significant that it forces investigators to stop

12:15PM  1    listening and start intervening now even though that will

12:15PM  2    likely expose the investigative apparatus that has taken

12:15PM  3    months to put in place.  But someone driving around bragging

12:15PM  4    about being armed, speaking disparagingly about someone who

12:15PM  5    apparently owes a drug debt was enough to prompt investigators

12:15PM  6    in this case to give their full attention to apprehending

12:15PM  7    Mr. Booker that day, and that speaks to the seriousness of

12:16PM  8    what he was up to.

12:16PM  9         Even on the theory that his words were just meant as

12:16PM  10   puffing or projection to let somebody else know in the

12:16PM  11   conspiracy that he was armed, what he is doing is making a

12:16PM  12   concerted effort to let other drug dealers involved in his

12:16PM  13   illegal activities know that he is armed with a deadly weapon.

12:16PM  14   And the projection of deadly violence in the context of a

12:16PM  15   deadly drug trade is about the worst combination of criminal

12:16PM  16   activity you can see in the law.

12:16PM  17        Now, it is, of course, important that the Court avoid

12:16PM  18   sentencing disparities, I agree, but not all differences in

12:16PM  19   sentencing amount to a disparity.  It certainly accords with

12:16PM  20   the 3553(a) factors and general notion of justice, but

12:16PM  21   different people and different crimes should be treated

12:17PM  22   differently.

12:17PM  23        And Mr. Booker has a unique and significant criminal

12:17PM  24   history.  Three prior delivery/manufacture convictions, a home

12:17PM  25   invasion conviction as well.  That is a record that sends the

12:17PM   1    clear signal this is somebody who will not comport himself to

12:17PM   2    what the law requires him to do.

12:17PM   3            And beyond that, unlike Mr. Johnson in this case, he

12:17PM   4    was caught with ammunition in circumstances that made pretty

12:17PM   5    clear to investigators and which are described in the PSR in

12:17PM   6    paragraphs 58 through 60 that show that he was hiding guns or

12:17PM   7    getting guns out of his possession while police were on the

12:17PM   8    way to capture him.

12:17PM   9            So while drug dealing is awful, it's serious and

12:17PM  10    unfortunately deadly at times, even worse is the possession of

12:17PM  11    deadly weapons in that context.  And while Mr. Booker's role

12:17PM  12    within this conspiracy may have been lesser in terms of his

12:17PM  13    role within the drug business, the fact that he was armed and

12:18PM  14    ready to hurt somebody else suggests that he should be treated

12:18PM  15    differently than those who didn't have that conviction in the

12:18PM  16    way that their cases were resolved.

12:18PM  17            And in view of all of that, Your Honor, I do not see

12:18PM  18    a reason for an upward variance in this case.  But I submit to

12:18PM  19    the Court that a sentence at the upper end of the advisory

12:18PM  20    guideline range is appropriate and necessary to account for

12:18PM  21    the full picture of who Mr. Booker is based on his previous

12:18PM  22    convictions and what his role was in this case.  Thank you,

12:18PM  23    Your Honor.

12:18PM  24            THE COURT:  Thank you.

12:18PM  25            This is a tough case because the arguments that have

| | | |
|---|---|---|
| 12:18PM | 1 | been made by both parties are valid.  They're both valid.  My |
| 12:18PM | 2 | impression is that Mr. Booker was on a very bad course in |
| 12:18PM | 3 | following, as you said so yourself, Mr. Booker, choosing the |
| 12:18PM | 4 | wrong role models, but I'm dealing with a long period of |
| 12:18PM | 5 | incarceration, mandatorily, and deciding what is sufficient |
| 12:19PM | 6 | but not greater than necessary.  That's a lot of time at the |
| 12:19PM | 7 | base level. |
| 12:19PM | 8 | So the Court's duty is to impose a sentence that is |
| 12:19PM | 9 | sufficient but not greater than necessary to comply with the |
| 12:19PM | 10 | purposes of sentencing set forth in 18 U.S.C. 3553.  These |
| 12:19PM | 11 | guidelines, this 188 to 235 months, the Court starts with that |
| 12:19PM | 12 | as an initial benchmark or starting point.  Then it has to |
| 12:19PM | 13 | make an individualized assessment based on the facts |
| 12:19PM | 14 | presented.  It's one of an array of factors that the Court has |
| 12:19PM | 15 | to consider, and I recognize my discretion in determining an |
| 12:19PM | 16 | appropriate sentence as recognized by the Supreme Court in its |
| 12:19PM | 17 | decisions in *Booker*, *Kimbrough*, *Gall*, *Rita*, *Spears*, and the |
| | 18 | Sixth Circuit case of *Herrera-Zuniga*. |
| 12:19PM | 19 | I also recognize, pursuant to *Tapia v. U.S.*, that |
| 12:20PM | 20 | imprisonment is not suitable for the purpose of promoting |
| 12:20PM | 21 | correction and rehabilitation. |
| 12:20PM | 22 | So taking into account the Defendant's request for a |
| 12:20PM | 23 | lower sentence, I looked at this, this case specifically and |
| 12:20PM | 24 | the elements that I have to take into account, the nature and |
| 12:20PM | 25 | circumstances of the offense, the history and characteristics |

12:20PM  1  of Mr. Booker, the seriousness of the offense, the need to

12:20PM  2  promote respect for the law, the need to provide just

12:20PM  3  punishment for the offense, to afford adequate deterrence to

12:20PM  4  criminal conduct in general, and to protect the public from

12:20PM  5  further crimes of the Defendant.

12:20PM  6      And also I can incorporate among that additionally

12:20PM  7  needed medical and educational, correctional treatment, but

12:20PM  8  not solely that.  And there is a need to avoid unwanted

12:20PM  9  sentencing disparity among similarly situated Defendants.

12:21PM  10     And, as Mr. Hakes stated in this case, the math of

12:21PM  11  the conduct that has gone before this -- these crimes for

12:21PM  12  Mr. Booker put him in the category where he is, and so that

12:21PM  13  puts us in that range of 188 to 235 months.

12:21PM  14     When fashioning a sentence, I look at the fact that

12:21PM  15  Mr. Booker was clearly the middle man.  I saw the trial of

12:21PM  16  Mr. Cartwright.  I saw the videos and the delivery trips and

12:21PM  17  the gun and the money, right?  And I know that Mr. Johnson was

12:21PM  18  dating Mr. Booker's mother and became somewhat of a role model

12:21PM  19  to him.

12:21PM  20     And, as Mr. Booker said, he was following role models

12:21PM  21  when he's got this mother who is troubled by the course of

12:21PM  22  conduct of Mr. Booker and doesn't want him to have taken the

12:21PM  23  path that he did.  But he took that path, and he took that

12:21PM  24  path back at the age of eighteen in 2007 with his first CCW,

12:22PM  25  and then we've got three prior cocaine convictions and a home

12:22PM  **1**    invasion of a stranger.

12:22PM  **2**         Those are significant convictions.  Even if they're

12:22PM  **3**    small amounts, they're significant convictions.  And there is

12:22PM  **4**    other driving without a license, false reporting, refusing a

12:22PM  **5**    lawful order.  I'm not even going to comment on marijuana, but

12:22PM  **6**    additional operating without a license and reckless driving.

12:22PM  **7**         But what's troubling to me is the number of times

12:22PM  **8**    Mr. Booker went AWOL, the times that he didn't report after

12:22PM  **9**    getting caught for these legal offenses, having an inability

12:22PM  **10**   to comply with the law.  That's problematic.  What I want to

12:22PM  **11**   see is what is sufficient, but not greater than necessary, and

12:22PM  **12**   I take into account the ability of the individual to be

12:22PM  **13**   rehabilitated and to accord their conduct and to show an

12:22PM  **14**   element of that.

12:22PM  **15**        What I can tell is that Mr. Booker has family

12:23PM  **16**   support.  What I can tell is that people care about him, and

12:23PM  **17**   they want him -- hopefully they want him to follow the law and

12:23PM  **18**   to set a path going forward that is a better life.

12:23PM  **19**        And I know I have to give you 15 years to give you an

12:23PM  **20**   opportunity to do that.  And the question is, do I give you

12:23PM  **21**   15 years, or do I give you more, right?  So what else am I

12:23PM  **22**   looking at?

12:23PM  **23**        We know that Mr. Booker was willing to use both guns

12:23PM  **24**   and ammunition in furtherance of drug dealing.  And as

12:23PM  **25**   Mr. Hakes said, for the Government, that's a dangerous

|          |    |                                                                        |
|----------|----|------------------------------------------------------------------------|
| 12:23PM  | 1  | combination.  And whether it was truly an intent of Mr. Booker         |
| 12:23PM  | 2  | on those audio tapes to shoot someone or to project the danger         |
| 12:23PM  | 3  | associated with collecting a drug debt, those are dangerous            |
| 12:23PM  | 4  | circumstances.  And so it's easy to conclude this was a very           |
| 12:23PM  | 5  | dangerous situation that caused the police to intervene when           |
| 12:24PM  | 6  | they did.                                                              |
| 12:24PM  | 7  | I've mentioned the history and characteristics of                      |
| 12:24PM  | 8  | Mr. Booker.  He's got four siblings with no known criminal             |
| 12:24PM  | 9  | history, right?  So really great role models there.  He has a          |
| 12:24PM  | 10 | strong mother, a wonderful influence there.  That has not --           |
| 12:24PM  | 11 | has yet impacted Mr. Booker's behavior.  I hope that changes,          |
| 12:24PM  | 12 | right?                                                                  |
| 12:24PM  | 13 | A limited history of legitimate employment, which                      |
| 12:24PM  | 14 | looks like then this was your chosen avocation, right?  That's         |
| 12:24PM  | 15 | got to change going forward.  That's got to change.  But you           |
| 12:24PM  | 16 | have expressed remorse.  You've expressed the fact that you            |
| 12:24PM  | 17 | were following the wrong role models, right?  You've                   |
| 12:24PM  | 18 | apologized for not putting your family first.  You've got two          |
| 12:24PM  | 19 | children, right?  I know you want to be with those kids.  I            |
| 12:24PM  | 20 | know you want to be a good influence for them.                         |
| 12:24PM  | 21 | And I did take into account who your role models                       |
| 12:24PM  | 22 | were, right?  One was dating your mother after your stepfather         |
| 12:25PM  | 23 | passed away.  I've taken into account your prior criminal              |
| 12:25PM  | 24 | history.  And in my -- in my sentence I have to reflect the            |
| 12:25PM  | 25 | seriousness, which I think the minimum does.  I have to                |

12:25PM  1   promote respect for the law, which 15 years does.  I have to,

12:25PM  2   you know -- and then with regard to that, I need to -- for

12:25PM  3   you, I need to promote that, right?

12:25PM  4        You've been a lifelong drug dealer.  You've engaged

12:25PM  5   in home invasion.  Illegally possessed ammo when you knew

12:25PM  6   illegally you were not supposed -- er, legally you were not

12:25PM  7   supposed to.  So there has been symptoms of inability to

12:25PM  8   conform with the law.  So my sentence has to hopefully change

12:25PM  9   that for you.

12:25PM  10       I have to provide just punishment for this case, just

12:25PM  11  as we do for all others, and that's where those guidelines do

12:25PM  12  come in, and to deter criminal conduct by other people, right?

12:25PM  13  We have to impose penalty to protect others, to stop this, and

12:26PM  14  to stop you, hopefully, while you're getting on the path to

12:26PM  15  change.

12:26PM  16       So what am I going to do?  Correct me if I'm wrong,

12:26PM  17  but is the mandatory minimum 180 months, Mr. Hakes?

12:26PM  18       MR. HAKES:  That's correct, Your Honor.

12:26PM  19       THE COURT:  So I've given thought as to really where

12:26PM  20  to be on this.  And I feel like 180 months is not much

12:26PM  21  different than 188 months.  Could I go above that?  Yes, but

12:26PM  22  we're talking 15 years.  15 years; that's a long time.

12:26PM  23       If you're not going to be rehabilitated in that, I

12:26PM  24  don't know how you will be.  I don't think another eight

12:26PM  25  months is going to do it or another two years is going to do

12:26PM  **1**    it.

12:26PM  **2**            So I'm going to -- pursuant to the Sentencing Reform

12:26PM  **3**    Act of 1984, I am going to sentence you to 180 months to the

12:27PM  **4**    custody of the Bureau of Prisons.  It is my greatest hope that

12:27PM  **5**    you use those 15 years wisely.  And I'll see you on the back

12:27PM  **6**    end if you don't, but it is my greatest hope that this minimum

12:27PM  **7**    time is going to make a difference in your life going forward.

12:27PM  **8**            You are a young man.  So it's my hope that when you

12:27PM  **9**    get out, you will be more mature and you will make that family

12:27PM  **10**   proud.  So I'm going to give you the mandatory minimum for

12:27PM  **11**   Counts 1, 2, and 3 to be served concurrently.

12:27PM  **12**           With regard to supervised release on Count 4, I'll

12:27PM  **13**   impose four years.  On Counts 2 and 3, I'll impose three years

12:27PM  **14**   all to run concurrently.

12:27PM  **15**           With regard to the fine, you do have kids.  You've

12:27PM  **16**   got child support debts as well, but you are a young man.  And

12:27PM  **17**   one thing I want you to learn is to work in a legal field.  So

12:27PM  **18**   I am going to impose $500 fine for each count, which would be

12:28PM  **19**   $1,500.  Counts 1, 2, and 3.  I'm going to waive any interest

12:28PM  **20**   on that fine.  I'm going to impose the mandatory special

12:28PM  **21**   assessment of $300.

12:28PM  **22**           I'm going to enter that forfeiture order commensurate

12:28PM  **23**   here.  It will become effective as of the entry of the

12:28PM  **24**   judgment for the 1575 cash that was found at your home on

12:28PM  **25**   November 22, 2020.

12:28PM **1**        So I believe that gets us to dismissal of the

12:28PM **2**    remaining counts.  Does the Government so move?

12:28PM **3**        MR. HAKES:  Yes, Your Honor.  Concerning Mr. Booker

12:28PM **4**    in all applicable charging instruments, the Government moves

12:28PM **5**    to dismiss all remaining charges.

12:28PM **6**        THE COURT:  Thank you.  I will grant that motion and

12:28PM **7**    dismiss all remaining counts from the Superseding Indictment,

12:28PM **8**    the Second Superseding Indictment, and the Third Superseding

12:29PM **9**    Indictment, and specifically really that's that 924(c) in

12:29PM **10**   particular.  Those are dismissed.

12:29PM **11**       Recommendations to the Bureau of Prisons.

12:29PM **12**   Ms. Nieuwenhuis, I want to talk to you about this.  You've

12:29PM **13**   mentioned a few in your sentencing memorandum.  You've

12:29PM **14**   mentioned one today.  And I've learned through my training

12:29PM **15**   that the Bureau of Prisons evaluates in order of priority how

12:29PM **16**   to meet the needs requested.

12:29PM **17**       And so how would you -- you've identified four:

12:29PM **18**   Educational and vocational opportunities, close to Grand

12:29PM **19**   Rapids.  Medical evaluation issues, I think, is a starter kit

12:29PM **20**   for everybody, but there are specifics here:  Rotten tooth and

12:29PM **21**   fluid on the lungs?

12:29PM **22**       MS. NIEUWENHUIS:  Yes.

12:29PM **23**       THE COURT:  Okay.  And the RDAP program.  How would

12:29PM **24**   you have me tier those?

12:30PM **25**       MS. NIEUWENHUIS:  Your Honor, I know that Mr. Booker

12:30PM  1  is very interested in the RDAP program.  Because he got the

12:30PM  2  amount of time that he did, that probably would not be

12:30PM  3  happening super fast.  I do know that he really would like to

12:30PM  4  be as close to home as possible for visits and such.  And then

12:30PM  5  however the Court wants to number them after that would be

12:30PM  6  fine.

12:30PM  7          THE COURT:  Okay.  All right.  Maybe I'll do --

12:30PM  8          MS. NIEUWENHUIS:  I think regardless of how the Court

12:30PM  9  would actually list that, I think that they do try to have it

12:30PM  10  where he's as close to possible taking into consideration the

12:30PM  11  recommendations.

12:30PM  12          THE COURT:  All right.  I'll enter that.  Thank you.

12:30PM  13          MS. NIEUWENHUIS:  All right.  You're welcome.

12:30PM  14          THE COURT:  Pursuant to the *United States v. Bostic*

12:30PM  15  case, is counsel satisfied that I've addressed on the record

12:30PM  16  all nonfrivolous arguments asserted?

12:30PM  17          MR. HAKES:  Yes, Your Honor.

12:30PM  18          MS. NIEUWENHUIS:  Yes, we are, Your Honor.

12:30PM  19          THE COURT:  Are there any legal objections to the

12:31PM  20  sentence imposed?

12:31PM  21          MR. HAKES:  None from the Government, Your Honor.

12:31PM  22          MR. CELIS:  Just a brief note for the record,

12:31PM  23  Your Honor.  In our sentencing memo, we raised an objection

12:31PM  24  that we acknowledge have been foreclosed by current Sixth

12:31PM  25  Circuit law, and that's to the 15-year penalty and whether

12:31PM **1**     that has to be charged in the Indictment and proven to a jury

12:31PM **2**     or by plea.

**3**             THE COURT:  Ah, yes.

12:31PM **4**             MR. CELIS:  So I just wanted to note that again for

12:31PM **5**     the record that it's foreclosed, but we would like to make

12:31PM **6**     that objection.

12:31PM **7**             THE COURT:  I appreciate that.  I read that in your

12:31PM **8**     brief, and that is preserved.  Thank you.

12:31PM **9**             All right.  Mr. Booker, I'm going to advise you of

12:31PM **10**     your appellate rights at this time.

12:31PM **11**             Oh, also I submitted for the -- to the Defendant,

12:31PM **12**     Mr. Booker, and Ms. Nieuwenhuis an order that lays out the

12:31PM **13**     mandatory and special conditions of supervised release, and

12:31PM **14**     it's my understanding that that order has been signed.

12:31PM **15**             MS. NIEUWENHUIS:  That is correct, Your Honor, yes.

12:31PM **16**     We did review it, and we both signed.

12:32PM **17**             THE COURT:  All right.  So that will enter as well at

12:32PM **18**     the same time as the judgment.

12:32PM **19**             MS. NIEUWENHUIS:  All right.

12:32PM **20**             THE COURT:  Mr. Booker, you have a right to appeal if

12:32PM **21**     you believe your guilty plea was somehow unlawful or

12:32PM **22**     involuntary or if there is some other fundamental defect in

12:32PM **23**     the proceeding that's not waived by your guilty plea.

12:32PM **24**             You also have a statutory right to appeal your

**25**     sentence under certain circumstances, particularly if you

1       think the sentence is contrary to law.

12:32PM    2            If you fail to file your notice of appeal within

3       14 days, you may forever lose the right to appeal.  So you

4       need to discuss this with defense counsel and let her know

5       immediately if you have any interest in appealing, as that is

12:32PM    6       your responsibility.

12:32PM    7            If you are unable to pay the cost of an appeal, you

8       may file an application for what is known as in forma pauperis

9       in which the fees may be waived.  If you wish to do so, with a

10      few exceptions, you need to file the appropriate documents

12:32PM   11      within 14 days of the entry of judgment, which will likely

12:32PM   12      happen today that we'll enter that judgment.

12:32PM   13            Again, talk to Ms. Nieuwenhuis about that.  She'll

12:32PM   14      handle all of the filing for you, but you need to let her know

12:32PM   15      what you want.  Understood?

12:33PM   16            THE DEFENDANT:  Yes, ma'am.

12:33PM   17            THE COURT:  Mr. Booker, do you have any questions

12:33PM   18      about anything we talked about today?

12:33PM   19            THE DEFENDANT:  No, ma'am.

12:33PM   20            THE COURT:  Do you acknowledge that I've provided you

12:33PM   21      with your appellate rights?

12:33PM   22            THE DEFENDANT:  Yes, ma'am.

12:33PM   23            THE COURT:  Ms. Nieuwenhuis, as I'm required to do, I

12:33PM   24      remind you of your obligation to continue representing

12:33PM   25      Mr. Booker until so released by the Sixth Circuit.

12:33PM  **1**          MS. NIEUWENHUIS:  I understand.  And I did want to

12:33PM  **2**     add for the record that we believe everything has been

12:33PM  **3**     addressed, and I appreciate Mr. Celis putting that in the

12:33PM  **4**     record.

12:33PM  **5**          THE COURT:  Thank you.

12:33PM  **6**          All right.  Mr. Booker, I wish you well.  I hope that

12:33PM  **7**     you're able to stay in communication with your family, and

12:33PM  **8**     that at the end of your sentence the rest of your life will be

12:33PM  **9**     fulfilling and productive and that I can meet you as a citizen

12:33PM  **10**     in a different career path for yourself.  I'm very hopeful for

12:34PM  **11**     you to do that.

12:34PM  **12**          So at this time I'll remand you to the custody of the

12:34PM  **13**     marshals to begin your sentence.  Thank you.

12:34PM  **14**          That's all for the record.

12:34PM  **15**          THE CLERK:  All rise, please.  This court is now

12:34PM  **16**     adjourned.

12:34PM  **17**                    (At 12:34 p.m., the matter was

         **18**                    concluded.)

         **19**

         **20**

         **21**

         **22**

         **23**

         **24**

         **25**

*REPORTER'S CERTIFICATE*

1

2

3              I, Melinda I. Dexter, Official Court Reporter for

4      the United States District Court for the Western District of

5      Michigan, appointed pursuant to the provisions of Title 28,

6      United States Code, Section 753, do hereby certify that the

7      foregoing is a full, true, and correct transcript of the

8      proceedings had in the within entitled and numbered cause on

9      the date hereinbefore set forth; and I do further certify

10     that the foregoing transcript has been prepared by me or

11     under my direction.  WITNESS my hand this date, September 19,

12     2022.

13

14

15     _____
       Melinda I. Dexter, CSR-4629, RMR, CRR
16     U.S. District Official Court Reporter
       602 Federal Building
17     110 Michigan St., NW
       Grand Rapids, MI 49503

18

19

20

21

22

23

24

25